**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RAEQUAN BATTLE,**

    Plaintiff,

v.

**NATIONAL COLLEGIATE ATHLETIC ASSOCIATION,**

    Defendant.

Civil Action No. 1:23-cv-101
Hon. John Bailey

## DECLARATION OF RAEQUAN BATTLE

I, RaeQuan Battle, declare that the following information is true and correct to the best of my knowledge and belief:

1. I am the Plaintiff in the above-referenced action.

2. I grew up on the Tulalip Indian Reservation in the mid-Puget Sound region of Washington state.

3. I am currently enrolled at West Virginia University

4. I started my college career at the University of Washington.

5. Following issues there, I transferred to Montana State University.

6. At Montana State, I continued to suffer mental health issues that affected and impaired my daily function.

7. But with the help of Coach Danny Sprinkle and others, I was seeking treatment and I believed my situation would improve.

8. However, after Coach Sprinkle left for Utah State University, I chose to transfer because it was hard dealing with my mental health issues at Montana State.

9. I chose to enroll at West Virginia University because I made a connection with Coach Josh Eilert and because in Morgantown, West Virginia, I found there were multiple competent treatment providers that could address my situation.

10. I also chose West Virginia University because the basketball team was uniquely ready, willing, and able to help me treat my issues as part of their team.

11. There were also academic reasons behind my choice of West Virginia University.

12. If I were to transfer to Utah State University to follow Coach Sprinkle, my graduation date might be delayed by up to a year. There were similar academic issues at other schools I considered transferring to.

13. If I were to delay my graduation by a year, it would severely—and negatively—impact my life.

14. My expectation upon enrolling at West Virginia University was to become a member of the basketball team.

15. West Virginia University shared that expectation.

16. I have a contractual relationship with the Country Roads Trust to license my name, imagine, and likeness ("NIL").

17. I also have other relationships with third-parties to license my NIL.

18. My ability to license my NIL is dependent upon my prominence, athletic skill, and notoriety.

19. By preventing me from playing basketball at West Virginia University, the National Collegiate Athletic Association ("NCAA") has interfered with and harmed my relationship with West Virginia University.

20. By preventing me from playing basketball at West Virginia University, the National Collegiate Athletic Association has interfered with and harmed my ability to license my NIL.

21. When I decided to play college sports, I believed that the NCAA would abide by its own rules, regulations, bylaws, and guidelines.

22. My expectation when deciding to play college sports was that the NCAA had made promises about its concern for student-athletes' welfare and and the fair and rationale administration of its rules, regulations, bylaws, and guideline and that the NCAA would abide by these promises.

23. I relied upon the NCAA's promises when I decided to play basketball in college.

24. I, likewise, relied upon the NCAA's promises when I decided to transfer to West Virginia University.

25. I believed that the NCAA would follow its own guidelines and grant me a waiver.

26. I relied upon the NCAA's promises to my detriment.

27. I complied with all requirements when I requested my waiver.

28. At all times I supplied with NCAA with the information it needed to grant me a waiver.

29. My understanding is that the NCAA would be more inclined to grant me a waiver if I were moving closer to home.

30. However—as I have repeatedly explained to the NCAA—my home life is not conducive to treating my mental health issues.

31. Drug use is common where I am from.

32. I have had a number of friends and family members die from drug overdoses.

33. And while being the only person from my tribe to play Division I college athletics is a great honor, it also comes with immense pressure.

34. For this reason I have found that the further I get from home, the more effective my treatment for mental health issues.

35. My hope is that I can someday be a role-model for younger members of my tribe, but to do that I must get healthy first.

36. At no time has anyone from the NCAA spoken to me personally about my situation.

37. My treaters and healthcare providers believe that the best course of action for me is to continue seeking treatment while I play basketball at West Virginia University.

38. Playing varsity basketball at West Virginia University provides me with structure, camaraderie, a sense of accomplishment and pride, and a healthy outlet for stress and anxiety.

39. These are all things I have discussed with my treaters and which they agree are beneficial to my treatment.

40. I have provided sufficient information to the NCAA so that they are also aware of that fact.

41. I have been harmed by the NCAA's refusal to follow its own rules, regulations, bylaws, and guidelines.

42. I will be immediately and irreparably harmed if this situation continues.

43. You only get so much time to play high-level athletics. To lose an entire year—a year that as it stands now may be my last year of NCAA eligibility—is a significant loss that can never been recovered.

44. Moreover, losing a year of the publicity that comes from playing Division I athletics when I should be allowed to do so has harmed my ability to license my NIL.

45. I have also considered the possibility of playing professionally following college. However, most professional organizations prefer that college athletes play as much as possible so that they have the greatest opportunity to evaluate your skills.

46. By improperly preventing me from playing for a year, the NCAA will thus irreparably harm my prospects of playing basketball professionally.

47. Finally, the mental toll on seeing the one public activity in which you can take pride ripped away from you unjustly is not something that I can easily get over, if I ever can.

48. This Affidavit is being executed in accordance with Rule 65 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1746.

49. The statements contained are true and correct to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 11, 2023.

_____
RaeQuan Battle