EXHIBIT
3

**NCAA Division I Committee for Legislative Relief**
**Information Standards, Guidelines and Directives**
*(Updated January 11, 2023)*

The NCAA Division I Committee for Legislative Relief, formerly the NCAA Division I Management Council Administrative Review Committee was created in 1993 in response to the membership's desire for more rules' flexibility. This group consists of a committee of the NCAA Division I Council (formerly the NCAA Division I Legislative Council) that reviews the application of NCAA legislation in cases where the circumstances are extraordinary in nature [NCAA Bylaw 5.4.1.3 (Subcommittee for Legislative Relief of the Council)]. In April 2008, as a result of the transition to the new Division I governance structure, the Administrative Review Committee was renamed the NCAA Division I Committee for Legislative Relief. The equivalent waiver committees in Divisions II and III are the NCAA Division II Committee for Legislative Relief and the NCAA Division III Management Council Committee for Legislative Relief.

<u>**Committee of Legislative Relief Authority**</u>.

At its October 2003 meeting, the Legislative Council approved the Division I Committee for Legislative Relief's recommendation affording the committee authority to waive the application of a rule when the circumstances of the case do not fit the intended consequences of the rule, even when the result could be a temporary rule change. The committee received endorsement from the Legislative Council for a shift in the philosophy of the legislative relief process affording the committee with the authority to waive legislation, prior to Legislative Council input, when circumstances arise that do not seem to be an  intended consequence of legislation (i.e., the strict application of the rule based on its intent seems "overreaching" given the fact situation) even if granting such a waiver will essentially result in a temporary rule change in these limited instances.

Some potential guidelines for the committee when considering such an issue are below:

1.     Minimal to no competitive or recruiting advantage will result from the waiver being granted.

2.     Student-athletes collectively benefit from the granted waiver (as opposed to a select group of student-athletes benefiting at the cost of others).

3.     The activity being prohibited from the rule appears to be an unintended consequence.

The committee believes that implementing any widespread, long-term changes should ultimately be accomplished through the legislative process. However, with the alteration of the timeline of the current legislative process and the less bureaucratic, more responsive philosophy, the committee believes that short-term relief may be provided to student-athletes when circumstances meet the proposed guidelines. Further, the committee would continue to review any adopted guidelines with the Legislative Council and, if the Legislative Council were not supportive, those legislative relief waiver cases decided in accordance with the guidelines would be archived.

NCAA Division I Committee for Legislative Relief
   Information Standards, Guidelines and Directives
Page No. 2
_____

**Bylaw 11**.

**Committee for Legislative Relief Information Standards [Bylaws 11.4.2, 11.4.3, 11.4.4, 13.8.3.2, 13.8.3.3 and 13.8.3.4] – Individual Associated with a Prospective Student-Athlete – Football Bowl Subdivision, Men's Basketball and Women's Basketball.**

During its November 2017 meeting, the committee approved information standards for waivers involving individuals associated with a prospective student-athlete legislation in the sports of Football Bowl Subdivision football and men's basketball and individuals associated with a recruited prospective student-athlete legislation in the sport of women's basketball.  Specifically, an institution seeking relief of the legislation will be required to provide the following:

1.      Statement from the institution detailing the following:

    a.      How the individual triggered the definition of an individual associated with a prospective student-athlete.

    b.      Chronology of events related to the hire.

        (1)      Date the institution posted job description for the noncoaching staff or strength and conditioning coach position;

        (2)      Documentation that the institution followed its normal process for posting open positions;

        (3)      Number of applicants who applied for the position;

        (4)      Date of the individual associated with a prospective student-athlete's interview;

        (5)      Date of the institution's offer of employment or intent to hire the individual associated with a prospective student-athlete;

        (6)      Date the institution began recruiting the prospective student-athlete;

        (7)      Date the prospective student-athlete committed to the institution;

        (8)      Information regarding whether or not the position is an already established position or a new position;

        (9)      Events that led to the hire (e.g., previous relationship); and

        (10)      Statement from head coach regarding decision to hire individual associated with the prospective student-athlete.

2.      Statement from individual associated with a prospective student-athlete detailing the following:

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 3
_____

    a.      Involvement in the prospective student-athlete's recruitment at the institution and if applicable, at the previous institution.

    b.      Statement detailing the nature of the contact (e.g., type of contact, duration, was there a break in communication) throughout the relationship with the prospective student-athlete.

    c.      An explanation regarding the contact made with the prospective student-athlete regarding the individual associated with a prospective student-athlete's employment (e.g., was the individual associated with a prospective student-athlete aware of the institution's recruitment of the prospective student-athlete?).

3.      Statement from the prospective student-athlete detailing the following:

    a.      Individual associated with a prospective student-athlete's involvement in the prospective student-athlete's recruitment at the institution and if applicable, at the previous institution.

    b.      The nature of the contact (e.g., type of contact, duration, was there a break) throughout the relationship with the individual associated with the prospective student-athlete?

    c.      An explanation regarding the contact made with the individual associated with a prospective student-athlete regarding his or her possible employment (e.g., was the prospective student-athlete aware of the individual associated with a prospective student-athlete's interest in a position at the institution?).

    d.      Statement from prospective student-athlete explaining enrollment decision.

4.      If the involved prospective student-athlete is transferring from an NCAA four-year institution, a statement from administration at the previous institution indicating its support for the transfer; and

5.      After thorough review of the information presented, NCAA legislative relief staff will review and consider the intent of the legislation and determine whether the facts presented provided the institution with a recruiting advantage.

**Bylaw 12.**

**1.      Seasons of Competition: Five-Year Rule Legislation [Bylaw 12.8]**

**Waivers Involving Requests for An Additional Season of Competition or to Exempt Competition From The Use of A Season of Competition.**

•      During its February 2022 meeting, the committee reviewed case precedent and recommended that staff deny cases requesting to exempt competition from the use of a season of competition or for additional seasons of competition. The committee

NCAA Division I Committee for Legislative Relief
 Information Standards, Guidelines and Directives
Page No. 4

noted that no other entity (other than the NCAA Division I Board of Directors) has the authority to act and determined that it would review these circumstances on a case-by-case basis but were inclined to deny. Further, the committee confirmed that requests to provide an additional season of competition or to exempt competition from the use of a season of competition would be considered only if based on a participation history that:

(1)    Has not been reviewed through the season of competition, hardship or extension of eligibility waiver process; and

(2)    Is clearly unaddressed by directives and/or guidelines put forth by the NCAA Division I Student-Athlete Reinstatement Committee.

**2.    Delayed-Enrollment Legislation [Bylaws 12.8.3.2, 12.8.3.2.1, 12.8.3.2.2, 12.8.3.2.2.2 and 12.8.3.5] – Guidelines, Information Standards and Directives.**

**<u>Waivers Involving Military Services</u>**.

a.    Guidelines.

During its September 2013 meeting, the committee revised the relief that can be provided for waivers involving Bylaws 12.8.3.2.1 (delayed-enrollment – sports other than men's ice hockey, skiing and tennis) and 12.8.3.2.2 (tennis) for student-athletes who became subject to the legislation during his or her participation in military service. This guideline does not apply to relief of Bylaws 12.8.3.2.2.2 (matriculation after 20th birthday – tennis) and 12.8.3.5 (participation after 21st birthday – men's ice hockey and skiing).

Specifically, the committee agreed relief should be provided for the season(s) of competition that a student-athlete became subject to under Bylaws 12.8.3.2.1 and 12.8.3.2.2-(a) and the year-in-residence requirement provided the student-athlete's participation in organized competition occurred during the student-athlete's participation in military service and the student-athlete was not designated as exceptional or elite-athlete status as defined by the student-athlete's home country. The committee agreed in cases in which a student-athlete's participation in organized competition occurred during the student-athlete's participation in military service and the student-athlete was not exempt from military obligations to participate in the student-athlete's sport or the student-athlete did not satisfy his or her military obligation by representing the country in athletics competition(s), relief should be provided for the season(s) of competition and the academic year-in-residence requirement. Additional mitigation or extenuating circumstances unrelated to the assertion of military service shall be reviewed on a case-by-case basis to determine if relief is warranted.

This change is effective February 1, 2014, for any student-athlete initially enrolling as a full-time student at a Division I institution on, or after, August 1, 2013.

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 5
_____

The committee noted staff could provide full relief (i.e., season(s) of competition and academic year-of-residence requirement) from the delayed-enrollment legislation when the following information or circumstances are presented for cases involving military service:

(1)     Military service must be supported by objective documentation;

(2)     The service must occur immediately after the student-athlete's completion of high school (as defined and required in the rule) and the student-athlete must enroll as a full-time student at a collegiate institution at his or her first opportunity once he or she is released from military service; and

(3)     The participation may only be of an amateur nature and there can be no amateurism violations as a result of the participation (e.g., prize money, contract, professional competition).

Specifically, the guidelines only apply to training and competition that occurs while a student-athlete is fulfilling his or her military service. No relief shall be provided if a student-athlete subjects himself or herself to the legislation either prior to enlistment in the military and/or after the student-athlete is discharged from military service (regardless of whether the student-athlete had an opportunity to enroll at the time of discharge). Thus, following graduation from high school, a student-athlete must begin his or her military service prior to becoming subject to the legislation and must cease all competition on being discharged from military service in order to receive protection under the guidelines.

In regard to a student-athlete who has received exceptional or elite-athlete status in the military, the committee agreed relief could only be provided for the season(s) of competition that a student-athlete became subject to under Bylaws 12.8.3.2.1 and 12.8.3.2.2-(a); however, no relief may be provided by the staff for the academic year in residence.

If the student-athlete was exempt from military obligations to participate in the student-athlete's sport or the student-athlete satisfied his or her mandatory military obligation by representing the country in athletics competition(s) (i.e., exceptional or elite-athlete status as defined by the student-athlete's home country), the committee agreed that relief could only be provided for the season(s) of competition that a student-athlete became subject to under Bylaws 12.8.3.2.1 and 12.8.3.2.2-(a); however, no relief may be provided by the staff for the academic year-in-residence. Additional mitigation or extenuating circumstances unrelated to the assertion of military service shall be reviewed on a case-by-case basis to determine if relief of the academic year in residence is warranted.

This change is effective February 1, 2014, for any student-athlete initially enrolling as a full-time student at a Division I institution on, or after, August 1, 2013.

The committee noted staff could consider partial relief (i.e., season(s) of

NCAA Division I Committee for Legislative Relief
   Information Standards, Guidelines and Directives
Page No. 6
_____

competition) from the delayed-enrollment legislation when the following information or circumstances are presented for cases involving elite-athlete status for student-athletes participating in military service:

(1)     Military service must be supported by objective documentation;

(2)     The service must occur immediately after the student-athlete's completion of high school (as defined and required in the rule), and the student-athlete must enroll as a full-time student at a collegiate institution at his or her first opportunity once he or she is released from military service; and

(3)     The participation may only be of an amateur nature, and there can be no amateurism violations as a result of the participation (e.g., prize money, contract, professional competition).

Specifically, the guidelines only apply to training and competition that occurs while a student-athlete is serving in the military. No relief shall be provided if a student-athlete subjects himself or herself to the legislation either prior to enlistment in the military and/or after the student-athlete is discharged from military service (regardless of whether the student-athlete had an opportunity to enroll at the time of discharge). Thus, following graduation from high school, a student-athlete must begin his or her military service prior to becoming subject to the legislation and must cease all competition on being discharged from military service in order to receive protection under the guidelines.

b.     Information Standards.

(1)     Military service must be supported by objective documentation (e.g., service enlistment date, service discharge date, attendance report that includes all leave time taken by the student-athlete to practice, train and/orcompete in his or her sport);

(2)     Date of high school graduation as determined by the NCAA Eligibility Center. [NOTE: If the individual never received an amateurism certification from the NCAA Eligibility Center, then the institution must determine the date of high school graduation as defined and required in Bylaws 12.8.3.2.1 and 12.8.3.2.2;

(3)     Documentation related to the amount of competition the individual participated in during each year that the student-athlete was subject to the legislation. This documentation must include the actual dates of competition on which the individual competed as opposed to the dates of the scheduled events in which the student-athlete competed;

(4)     Documentation that the individual immediately enrolled as a full-time student at a collegiate institution at his or her first opportunity on being

discharged from military service. [NOTE: The guidelines specify no relief will be provided if the student-athlete continues to compete after being discharged from his or her military service and prior to initial enrollment];

(5)     Documentation confirming whether the student-athlete did or did not receive exceptional or elite-athlete status while enlisted in the military; and

(6)     Additional documented mitigation (e.g., circumstances outside of the individual's or institution's control), if any, related to why relief is warranted from Bylaws 12.8.3.2.1 and 12.8.3.2.2.

3.    **Bylaw 12.8.3.5 (Participation After 21st Birthday – Men's Ice Hockey and Skiing).**

- Directive.

  At the October 2000 meeting, the committee issued a directive to deny requests to waive Bylaw 12.8.3.5 in light of historical intent of the legislation and a defeated legislative proposal to exempt competition associated with international military service from the 21st birthday rule (even if the international military service was mandatory). The staff published an article in the November 20, 2000, edition of The NCAA News regarding the committee's policy. The committee reaffirmed its October 2000 directive regarding military service during its March 2010 meeting and noted that it applies to all situations under Bylaw 12.8.3.5, including the legislative changes effective August 1, 2020, related to men's ice hockey and skiing.

- **Common Assertions for Relief.**

  Guideline.

  During its March 2010 meeting, the committee reviewed the most common assertions submitted as a basis for relief for waiver requests involving Bylaws 12.8.3.2.1 (delayed enrollment – sports other than men's ice hockey, skiing and tennis), 12.8.3.2.2 (delayed enrollment – tennis), 12.8.3.2.2.2 (matriculation after 20th birthday – tennis) and 12.8.3.5 (participation after 21st birthday – men's ice hockey and skiing). The committee noted that the most common assertions submitted as mitigation are as follows:

  (1)     The student-athlete participated in a minimal amount of competition or the type of competition was not of the caliber that should subject a student-athlete to the use of season(s) of competition;

  (2)     The student-athlete is an international student and/or did not have knowledge of the amateurism legislation, delayed-enrollment legislation or NCAA rules in general prior to participating in competition resulting in the use of season(s) of competition;

  (3)     The institution discovers that the student-athlete is subject to the use of

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 8
_____

season(s) of competition after the student-athlete enrolled and began competing at the institution; and

(4)    The student-athlete relied on misinformation from various NCAA coaching staff members or the applicant institution's coaching staff during the recruitment process and/or was not informed of the legislation.

The committee agreed that while it will continue to review requests on a case-by-case basis, the assertions in and of themselves will not likely result in relief from the legislation without the demonstration of extenuating or extraordinary circumstances.

The committee noted the primary analysis for such waiver requests shall focus on the circumstances outside of the student-athlete's control (e.g., specific event that necessitated the delay such as a financial hardship or the death of a family member) that necessitated the individual's delayed collegiate enrollment. Specifically, the staff and committee will evaluate the duration of time that the mitigation impacted the student-athlete's ability to enroll (e.g., chronology of events), what circumstances have changed related to the specific event (e.g., how has situation improved or changed) and whether or not the student-athlete initially enrolled at his or her first opportunity after the mitigation was remedied.

**Bylaw 13**.

1.    **Local Sports Clubs [Bylaws 13.11.2.4 and 13.11.2.4.1] – Information Standards**.

During its October 2002 meeting, the committee approved information standards for institutions requesting to waive the local sports club legislation.

If an institution is seeking a waiver on behalf of a prospective student-athlete to allow participation in local sports clubs beyond the permissible 50-mile limitation, the following information must be submitted:

a.    Documentation of other opportunities (if any) for clubs that exist within the 50-mile radius; or

b.    Other opportunities outside the 50-mile radius without institutional involvement. If there are other club opportunities available to the prospective student-athlete within the 50-mile radius, the request will be denied unless extenuating circumstances are presented.

If an institution is seeking a waiver on behalf of one of its coaches to participate in a local sports club that does not meet the legislation, the following information must be submitted:

a.    Documentation of the extenuating circumstances that caused the waiver to be submitted; and

b.    An indication of the time frame of the coach's continued involvement with the club

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 9
_____

team.  If the institution is seeking a waiver to permit the coach to continue with a club indefinitely or for a substantial amount of time, the request will be denied.

Lastly, in all local sports club requests, the committee will require documentation from the institution indicating whether the institution is recruiting the involved prospective student-athlete and whether it is willing to abstain from recruiting the prospective student-athlete if the waiver is granted.

2.   **Summer Basketball Leagues [Bylaws 13.18 and 13.18.1] – Guideline.**

At the January 2003 Management Council meeting, the legislation was amended to require that participants on nonscholastic teams be legal residents of the state in which the team is located or a geographically adjoining state and not more than a total of three prospective student-athletes from adjoining states may participate on any one nonscholastic team.

During its April 2003 meeting, in preparation for the possibility of future legislative relief requests seeking to waive this legislation, the committee consulted with the chair of the NCAA Division I Men's Basketball Issues Committee and approved the following guideline: Relief from the strict application of the legislation should be granted only in situations in which no permissible team exists that will allow a prospective student-athlete the opportunity to participate in any NCAA-certified event.

**Bylaw 14.**

1.   **Initial-Eligibility Issues [Bylaw 14.3] – Guidelines.**

During its October 2000 meeting, the committee reviewed situations where institutions were seeking an additional season of competition or attempting to change a student-athlete's certification as a partial qualifier or a nonqualifier. The committee determined that since another body exists to address initial-eligibility violations, the committee should not review these cases. The committee determined that it would no longer review requests to waive Bylaw 14.3 with the exception of Bylaw 14.3.4, inasmuch as there is no body in place to review the transfer aspect of the initial-eligibility legislation.

2.   **Guidelines for Waivers Involving Bylaws 14.3.2.3 (Outside Competition – Nonqualifier) and 17.31.1 (Outside Competition – Sports Other Than Basketball).**

During its March 2014 meeting, the committee agreed that relief may be provided for waivers involving Bylaws 14.3.2.3 and 17.31.1 for nonqualifiers to practice or compete on an outside team during the academic year of residence.

Specifically, the committee agreed relief could only be provided when the following information or circumstances are presented:

a.   The competition must be elite-level competition (e.g., national team);

b.   The competition occurs during a vacation period between terms and **during a holiday or official vacation period as listed on the institution's academic**

Case 1:23-cv-00101-JPB   Document 3-3   Filed 12/12/23   Page 10 of 23   PageID #: 506

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 10
_____

        calendar; the student-athlete shall not miss class time or other academic support (e.g., tutoring);

c.      The competition is limited to one event during the first regular academic term and a maximum of two events per year;

d.      The student-athlete must be meeting all NCAA and conference progress-toward-degree requirements and be in good academic standing as defined by the institution; and

e.      The waiver request must include a letter of support from the faculty athletics representative.

The committee noted that waivers of this legislation will be reviewed on a case-by-case basis. *(Adopted March 2014)*.

**3.**    **Academic Year of Residence Legislation [Division I Bylaw 14.5.5.1] – Information Standards, Guidelines and Directives.**

During its January 2023 meeting, the NCAA Division I Council approved an amendment to the committee policies to specify that immediate eligibility may only be established via a waiver for student-athletes who transfer: (1) for reasons related to the student-athlete's physical or mental health and well-being; (2) due to exigent circumstances outside the student-athlete's control; or (3) assertions involving diagnosed education impacting disabilities. Further, the student-athlete's overall academic record (e.g., meeting progress-toward-degree requirements, likelihood of graduation) and the previous institution's position on the request may be considered in the waiver analysis.

This change is effective for all undergraduate transfer student-athletes whose first championship opportunity for their sport of participation occurs during the 2023-24 academic year and thereafter. For undergraduate student-athletes seeking immediate eligibility for a 2022-23 academic year championship, please use the Four-Year Undergraduate College Transfer Waiver Guidelines- Championship Eligibility for Fall 2018 through Spring 2023.

Undergraduate transfer waiver requests will continue to be reviewed on a case-by-case basis; however, staff has been directed to deny cases with mitigating circumstances that are not outlined in the sections below.

**Assertions of Student-Athlete Injury or Illness.**

a.      Guidelines.

During its January 2023 meeting, the Council discussed the relief that can be provided for waivers involving NCAA Division I Bylaw 14.5.5.1 (four-year college transfers – general rule) in which an institution asserts that an injury or illness to

NCAA Division I Committee for Legislative Relief
 Information Standards, Guidelines and Directives
Page No. 11
_____

the student-athlete necessitated the student-athlete's transfer to applicant institution.

The committee approved the following guidelines regarding assertions of injury or illness to the student-athlete:

(1)     If the applicant institution is unable to provide contemporaneous medical documentation to substantiate the injury or illness to the student-athlete, the case should be denied.

(2)     If the applicant institution provides documentation substantiating an injury or illness, but the injury or illness is ancillary to the facts and thus does not relate to the need to transfer, the case should be denied.

(3)     If the applicant institution provides contemporaneous medical documentation substantiating that an injury or illness to the student-athlete necessitated the transfer to the applicant institution, the case should be granted.

(4)     The committee reviewed the common circumstances submitted for such waiver requests and instructed the staff to continue reviewing such requests on a case-by-case basis. In addition, the committee noted immediate eligibility should be considered when the following circumstances are appropriately documented:

    (a)     Nature of injury or illness. Staff should consider relief of the legislation for circumstances involving a medically documented debilitating injury or illness (including mental illness) to a student-athlete that necessitate the student-athlete's transfer;

    (b)     Chronology of events. Staff should consider relief of the legislation when the chronology of events supports that the student-athlete transferred because of the injury or illness. The student-athlete must transfer within or immediately after the academic year during which the injury or illness occurred, or significantly worsened; and

    (c)     Distance from the student-athlete's support system. Staff should consider relief of the legislation when the student-athlete transfers to an institution within a 100-mile radius from the student-athlete's home or support system due to the injury or illness. Additionally, staff may consider other relevant factors regarding the distance from applicant institution to student-athlete's support system (e.g., student-athlete transferred to the closest institution that would provide an opportunity to participate).

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 12
_____

    b.      Information Standards.

The committee adopted the following standards for situations in which a waiver of legislation is requested, and the mitigation provided by the institution involves an injury or illness to the student-athlete:

(1)    Applicant institution must submit contemporaneous medical documentation from the medical professional who diagnosed the student-athlete's condition demonstrating the student-athlete's condition is debilitating and that the student-athlete was receiving medical care and/or treatment at the previous institution for the injury or illness;

(2)    Applicant institution must provide a statement from the medical professional who treated the student-athlete while enrolled at the previous institution clearly demonstrating the reasons why the student-athlete's injury or illness necessitates the transfer to applicant institution;

(3)    Applicant institution must submit a letter from the student-athlete explaining the need for relief from the legislation;

(4)    Applicant institution must submit a statement demonstrating the steps that have been taken (or will be taken upon the student-athlete's enrollment) to treat the student-athlete's injury or illness at the institution;

(5)    Applicant institution must submit a written statement indicating the student-athlete is in good academic standing and meets all progress-toward-degree requirements at the institution; and

(6)    A written statement from the previous institution's director of athletics indicating the following:

(a)    Whether the student-athlete would have had an opportunity to return to the previous institution's team;

(b)    Whether the student-athlete was dismissed from the team for any reason and, if so, the date of the dismissal; and

(c)    Whether the student-athlete was athletically eligible and in good standing with the team at the time of departure from the institution.

**Assertions of Student-Athlete Mental Health.**

During its January 2023 meeting, the Council discussed the relief that can be provided for waivers involving Bylaw 14.5.5.1 (four-year college transfers – general rule) in which an

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 13
_____

institution asserts the impact of the student-athlete's mental health condition at the previous institution.

a.      Guideline.

The Council noted that relief should be provided in cases where the applicant institution provides evidence the student-athlete's mental health condition(s) impaired the student-athlete's daily function at the previous institution and necessitated transfer to applicant institution.

The Council noted that the distance from the student-athlete's support system should be considered when relief of the legislation is requested due to the student-athlete's mental health condition(s).

**NOTE:** In cases where the documentation submitted by the applicant institution does not clearly demonstrate the guidelines or information standards are satisfied the request may be shared with an expert or panel of experts in the field (e.g., licensed mental health providers).   The expert or panel will review the documentation and provide an analysis of the documentation to be considered by NCAA staff and the committee when reviewing the request.

b.      Information Standards.

The Council adopted the following information standards:

(1)      Applicant institution must provide evidence the student-athlete experienced impaired daily function at the previous institution.  Evidence of impaired daily function must be provided through contemporaneous medical documentation or through the submission of statements from multiple non-clinical sources at the previous institution regarding how the student-athlete's daily functioning was impacted or observed.

(2)      Applicant institution must provide evidence the student-athlete's impaired daily function was caused by mental health challenges and why those mental health challenges necessitate transfer to applicant institution.

(3)      Applicant institution must submit a letter from the student-athlete explaining the need to compete immediately at the new institution. Whenever possible, the student-athlete statement should include information regarding the onset of the student-athlete's mental health challenges (e.g., was there a specific event) and whether the student-athlete sought medical health services while in attendance at the previous institution, and if not, why.

(4)      Applicant institution must have on file a written care plan approved by a

Case 1:23-cv-00101-JPB   Document 3-3   Filed 12/12/23   Page 14 of 23   PageID #: 510

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 14
_____

licensed mental health care provider demonstrating the steps that have been taken (or will be taken upon the student-athlete's enrollment) to engage in mental health treatment.  Additionally, applicant institution must provide an attestation from its head coach and team physician/athletic trainer acknowledging the approved care plan.

(5)     Applicant institution must provide a signed attestation by the mental health care provider about the mental health safety of sports participation by the student-athlete.

(6)     Applicant institution must provide a written statement indicating that the student-athlete is in good academic standing and meeting all progress-toward-degree requirements at applicant institution.

(7)     A written statement from the previous institution's director of athletics indicating the following:

     (a)     Whether the student-athlete would have had an opportunity to return to the previous institution's team;

     (b)     Whether the student-athlete was dismissed from the team for any reason and, if so, the date of the dismissal; and

     (c)     Whether the student-athlete was athletically eligible and in good standing with the team at the time of departure from the institution.

**Assertions of Exigent Circumstances.**

The NCAA Division I Board of Directors established the exigent circumstances guideline to allow NCAA staff and the NCAA Division I Committee for Legislative Relief to operate effectively and provide appropriate legislative relief when faced with rapidly changing situations, particularly those in which no reasonable person could decide that staying at the institution was in the best interest of their well-being.

During its January 2023 meeting, the Council determined that exigent circumstances are those that are pressing, demanding and clearly necessitate a student-athlete's departure from the institution (not just athletics program) or its locale, and are unrelated to the student-athlete's athletic participation (e.g., playing time, position preference, perceived reputation of the athletics program, changes to athletics scholarship or coaching change).

a.     **Guideline.**

The Council approved the following guidelines regarding assertions that an undergraduate student-athlete's transfer was due to exigent circumstances outside of the student-athlete's control.

NCAA Division I Committee for Legislative Relief
   Information Standards, Guidelines and Directives
Page No. 15
_____

Staff should consider relief only when the following exists:

(1)  Contemporaneous, objective documentation demonstrating that the student-athlete's transfer was due to circumstances outside the student-athlete's control unrelated to athletics participation demanding the student-athlete's immediate departure from the previous institution (for example, physical assault or abuse, sexual assault, discrimination based on a protected class); and

(2)  The student-athlete transferred during or immediately after the term in which the documented exigent circumstance(s) occurred.

- The timing of the transfer may be evaluated on a case-by-case basis when compelling information is provided that clearly demonstrates why transferring immediately did not occur (e.g., pending legal proceedings).

b.  Information Standards.

The Council adopted the following information standards:

(1)  Contemporaneous and objective documentation of the circumstance outside the student-athlete's control that demanded the student-athlete's immediate departure from the previous institution (e.g., a police report, Title IX investigation report, Office of Student Affairs investigation report).

(2)  A written statement from the applicant institution indicating that the student-athlete is in good academic standing and meets all progress-toward-degree requirements at applicant institution.

(3)  A written statement from the previous institution's director of athletics indicating the following:

(a)  Whether the student-athlete would have had an opportunity to return to the previous institution's team;

(b)  Whether the student-athlete was dismissed from the team for any reason and, if so, the date of the dismissal; and

(c)  Whether the student-athlete was athletically eligible and in good standing with the team at the time of departure from the institution.

c.  The Council agreed while it will continue to review requests on a case-by-case basis, the assertions involving the following should be denied:

NCAA Division I Committee for Legislative Relief
   Information Standards, Guidelines and Directives
Page No. 16
_____

(1)     Academic Reasons. The Council directed staff to deny cases under the following, but not limited to, asserted academic reasons:

       (a)     Student-athlete transfers because the degree program does not meet his or her academic expectations.

       (b)     The institution or the student-athlete is unable to provide documentation to support their transfer for academic reasons.

       (c)     The student-athlete transferred for academic reasons on more than one occasion.

       (d)     The student-athlete transferred to change majors.

(2)     Athletics Reasons. The Council directed the staff to deny cases under the following, but not limited to, asserted athletics reasons:

       (a)     Lack of participation opportunity (practice or compete).

       (b)     Change or reduction in playing time.

       (c)     Change in position or role on the team.

       (d)     Changes to athletics scholarship.

       (e)     Coaching change.

**Assertions Involving Diagnosed Education-Impacting Disabilities.**

During its January 2023 meeting, the Council approved the continued use of the established guideline for assertions involving diagnosed education-impacting disabilities.

a.     Guideline.

During its October 2000 meeting, the staff provided the NCAA Division I Committee for Legislative Relief with an overview of cases processed where an education-impacting disability was included in the request. The staff informed the committee that it has reviewed two main types of cases, one where ethe education-impacting disability resulted in the need for relief and another where the education-impacting disability is not a direct factor in the request for relief. The committee adopted information standards for cases in which an education-impacting disability necessitates the need for a waiver. In its March 2014 meeting, the committee updated the information standards for these types of waivers.

b.     Information Standards.

NCAA Division I Committee for Legislative Relief
    Information Standards, Guidelines and Directives
Page No. 17
_____

The committee adopted the following information standards for cases in which an education-impacting disability necessitates the need for a waiver:

(1)     The institution must submit a current, signed documentation of the diagnosis (including test data) and/or recommendations from the treating professional (e.g., medical doctor, clinical psychologist, another qualified individual). If specific circumstances of the case indicate that this requirement is unnecessary, a prior diagnosis may be acceptable. (NOTE: The staff or committee reserves the right to request a second opinion or diagnosis).

(2)     If appropriate, the applicant institution should provide contemporaneous documentation from an individual who is qualified and licensed to diagnose and treat (e.g., psychiatrist, psychologist) the student-athlete with a mental health disorder (e.g., depression, anxiety, post-traumatic stress disorder).

(3)     The institution must submit a written statement from the student-athlete that addresses the impact of the diagnosed disability on his or her academic performance and its relation to the desired request for relief.

(4)     If the student-athlete has voluntarily disclosed to the office of disability services, the institution must provide documentation of the specific accommodations or academic adjustments granted to provide access to the student-athlete. This summary must include accommodations provided by the institution with respect to the student-athlete's disability, as well as academic and other support services provided, and any institutional accommodations related to adjustments of minimum performance requirements. If the institution offers any accommodations with respect to the student-athlete's athletics responsibilities, those should be indicated as well.

(5)     In a transfer situation, the applicant institution should provide documentation demonstrating that the student-athlete with an education-impacting disability needed support services and/or treatment that was unavailable and/or inadequate at the previous institution but available at the applicant institution.

4.      **Requests to Waive Eligibility for Institutional Financial Aid Legislation [Bylaw 14.5.5.4] Guideline**.

During its September 2014 meeting, the committee transferred waiver authority of all Bylaw 14.5.5.4 waivers to the NCAA Division I Progress-Toward-Degree Waivers Committee. The Committee for Legislative Relief determined that because another body exists to address eligibility for institutional financial aid, the committee would no longer review these cases.

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 18
_____

5.    **Postgraduate Student Transfers [Bylaw 14.6] – Information Standards, Guidelines and Directives.**

During its June 2020 meeting, the Committee for Legislative Relief adopted the following information standards for waivers of Bylaw 14.6.1 for those student-athletes transferring for the 2020-21 academic year or thereafter:

a.    Documentation from the appropriate academic authority that the student-athlete has been accepted at the institution he or she wishes to transfer to in accordance with the institution's academic offerings and requirements available to any incoming postgraduate student (e.g., second baccalaureate degree, major, minor, certificate program, graduate degree program, etc.).

b.    Documentation indicating whether the program of study is available at the student-athlete's previous institution.

c.    A statement from the student-athlete detailing the reasons for the transfer.

d.    A statement confirming the student-athlete was athletically eligible and in good standing with the previous team at the time of transfer (i.e., not dismissed from the team for rules violation nor subject to a disciplinary suspension) and was otherwise academically eligible to compete at their previous institution had they remained.

**Bylaw 15.**

1.    **Retroactive Financial Aid [Bylaw 15.3.1.3] – Guidelines.**

During its October 2002 meeting, the Committee for Legislative Relief approved the following guidelines for the staff to consider in evaluating retroactive financial aid cases: (1) Prior to the student-athlete commencing the academic work, it was agreed on by the student-athlete and the coaching staff, financial aid officer or other involved institutional administrator that the student- athlete would receive financial aid for the credit hours; and (2) Except for an administrative error or lack of communication, the student-athlete would have received the aid.

2.    **Period of Award (One-Year Period) and Assertions Involving Misinformation or Misapplication of the Legislation [Bylaw 15.3.3.1] – Guideline.**

During its March 2010 meeting, the Committee for Legislative Relief reviewed case precedent and determined that cases involving assertions of misinformation or a lack of information from institutional personnel (e.g., compliance, financial aid office, coaching staff member) for waivers of Bylaw 15.3.3.1 would be analyzed on a case-by-case basis; however, the committee is inclined to deny.

**Bylaw 17.**

1.    **Maximum Contest Limitations in the Sport of Basketball [Bylaw 17.3.5.1] – Information Standards and Guidelines.**

NCAA Division I Committee for Legislative Relief
 Information Standards, Guidelines and Directives
Page No. 19

_____

During its January 2019 meeting, the Committee for Legislative Relief agreed to develop guidelines and information standards for waivers of the maximum contest limits in the sport of basketball. For a waiver to be granted, an institution must demonstrate the requested relief is due to documented mitigating circumstances outside of the institution's control and directly impacts the institution's basketball team. If an institution fails to document unique, mitigating circumstances outside of the institution's control, the waiver should be denied.

The Committee for Legislative Relief agreed that while it will continue to review requests on a case-by-case basis, the most common assertions submitted as mitigating circumstances are outlined in the remainder of this section

2.   **Assertions of Institutional Error Due to Misinformation.**

 a. Guidelines.

  During its January 2019 meeting, the Committee for Legislative Relief reviewed case precedent and developed guidelines and information standards for assertions of an institutional error as the basis for relief of the maximum contest limits in the sport of basketball. The Committee for Legislative Relief also approved the following guidelines:

  (1) In cases where the institutional error led to the institution entering into a contract to participate in a contest that would cause the institution to exceedthe maximum contest limits and applicant institution documented that it relied on misinformation when entering into the contract, relief may be provided with the conditions that the waiver be approved on a one-time basis and future waivers may be denied, and that the team reduce its maximum contest limit by one the following academic year. Additionally, the institution's president/chancellor may receive a letter detailing the institutional error.

  (2) If the institution provides documentation demonstrating institutional error but the institution is not at its maximum contest limits, the case should be denied.

  (3) If the institution is unable to provide documentation demonstrating institutional error, the case should be denied.

 b. Information Standards.

  The Committee for Legislative Relief determined that if an institution asserts institutional error as a mitigating circumstance for relief of the maximum contest limit, the following must be included in the request:

  (1) A written statement of explanation from the person or persons responsible for or accused of providing erroneous information, which summarizes the

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 20

information given to the individual(s) responsible for basketball scheduling and game contracts;

(2)    Contemporaneous documentation demonstrating the misadvise (e.g., notes, approval of game contracts, etc.);

(3)    A statement from the compliance staff detailing the chronology of events and education provided to individuals(s) responsible for basketball scheduling and game contracts, including information regarding the institution's knowledge of the multiple-team event educational column and why the compliance staff was not involved prior to the individual(s) signing the contract for the institution's basketball team to participate in the multiple-team event;

(4)    A statement from the individual(s) responsible for signing a game contract demonstrating whether the individual(s), in good faith, relied on the erroneous information to the institution's detriment; and

(5)    A statement of support for the waiver from the institution's athletics director.

3.    __Assertions of Financial Hardship__.

a.    Guidelines.

During its January 2019 meeting, the Committee for Legislative Relief reviewed case precedent and developed information standards for assertions of financial hardship. The committee indicated that the information standards should require the financial hardship to be a result of an event operator error or the cancellation of a multiple-team event. The committee also approved the following guidelines:

(1)    In cases in which the institution is seeking to play an additional regular season contest to replace a multiple-team event contest lost due to the multiple-team event being cancelled or an event operator failing to secure an opponent to play the contest guaranteed in the multiple-team event contract and supporting objective documentation is provided demonstrating a financial hardship for the institution, relief may be provided; and

(2)    If the institution is unable to provide documentation demonstrating a financial hardship, the case should be denied.

b.    Information Standards.

During its January 2019 meeting, the Committee for Legislative Relief developed information standards for situations where the institution requests a waiver to play an additional regular season contest when the waiver is necessitated by financial considerations due to an event operator error or the cancellation of a multiple-team event:

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 21
_____

(1)  A copy of the institution's qualifying regular season multiple-team event contract that includes language guaranteeing the team the contest in the event;

(2)  A statement from the event operator detailing the failure to secure the contest guaranteed in the institution's multiple-team event contract or the cancellation of the multiple-team event;

(3)  A statement from the event operator detailing whether or not the event operator has failed to secure all games guaranteed to any institution pursuant to the institution's multiple-team event contract in the past.

(4)  A statement from the event operator detailing whether or not the event operator has failed to secure all games guaranteed to any institution pursuant to the institution's multiple-team event contract in the past.

(5)  A statement describing the steps taken by the event organizer and the institution to secure an opponent for the institution's contest in the event;

(6)  A statement from the institution detailing the estimated financial hardship associated with not participating in the contest in the event (e.g., estimated revenue, game guarantee);

(7)  A statement from the institution detailing the steps taken by the institution to vet the contractual obligations prior to submission of the waiver (e.g., steps taken to try and recover the financial hardship, pursuing legal action with the event operator for a potential breach of contract); and

(8)  A statement of support for the waiver from the institution's athletics director.

4.  **Assertions Involving Two Teams From the Same Conference Participating in the Same Multiple-Team Event.**

During its January 2019 meeting, the Committee for Legislative Relief developed information standards for situations in which two institutions from the same conference seek to participate in the same multiple-team event due to conference realignment:

a.  A copy of each institution's qualifying regular season multiple-team event contract;

b.  A statement describing the steps taken by the institutions to secure another qualifying multiple-team event to participate in;

c.  A statement from the institutions detailing the estimated financial hardship associated with not participating in the multiple-team event (e.g., financial penalty, estimated revenue, game guarantee;

d.  A statement from the conference indicating the date of the institution's official

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 22
_____

acceptance into the new conference; and

e.     A statement of support for the waiver from each institution's athletics director.

**5.**    <u>**Basketball – Exhibition Games To Raise Funds for Catastrophic Events**</u>.

- Guidelines.

  During its February 9, 2022 meeting, the Committee for Legislative Relief approved a recommendation issued by the NCAA Division I Men's and Women's Basketball Oversight Committees to permit an institution to conduct one of its two permissible exhibition games in the sport of basketball against a Division I institution for the purposes of raising funds for a catastrophic events (as defined by the Federal Emergency Management Agency), COVID-19 relief efforts, and/or social justice initiatives:

  (1)    Exhibition game must occur prior to the first permissible contest date;

  (2)    Exhibition game may occur at any location, other than a prospective student-athlete's educational institution or a facility that is regularly used by prospective student-athletes for practice or competition;

  (3)    No relief provided of time demands legislation (e.g., required day off, return time of 5 a.m. on day following competition);

  (4)    All net proceeds from exhibition game must go to a 501(c)(3)(s) to support humanitarian efforts for the catastrophic event, COVID-19 relief efforts and/or social justice initiatives; and,

  (5)    Institutions must report back to the NCAA the amount of money raised from the exhibition game and the name of the 501(c)(3) within 30 days following the date of the exhibition game.

  The Committee for Legislative Relief noted waivers to permit an institution to participate in an additional exhibition game or scrimmage in the sport of basketball will be denied, and previously signed contracts will not be considered mitigating circumstances.

NCAA Division I Committee for Legislative Relief
  Information Standards, Guidelines and Directives
Page No. 23
_____

6.    <u>**Requests to Waive Outside Competition Legislation [Bylaw 17.31.1] – Directive**</u>.

Men's Lacrosse: Minto Cup and Mann Cup. During its October 2006 meeting, the Committee for Legislative Relief determined that based on the extended history of the Canadian Minto Cup and Mann Cup (since 1901), the small number of student-athletes participating each year (four to six) and the amateur nature of the competition, relief via the waiver process could be provided as long as the student-athletes are missing no more than  two days (i.e., 48 hours) of class and/or campus time  (including weekends).

The Committee for Legislative Relief determined that minimizing the amount of missed class time is consistent with the intent of the legislation and the overall principle that student-athletes should miss minimal class and/or campus time due to outside competition occurring during the regular academic year.