IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | | |
|---|---|---|
| **RAEQUAN BATTLE,** | : : : | |
| **Plaintiffs,** | : : | CASE NO: 1:23-cv-00101 |
| v. | : : : | Judge John Preston Bailey |
| **NATIONAL COLLEGIATE ATHLETIC ASSOCIATION** | : : : : | |
| **Defendant.** | : | |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS BY DEFENDANT
<u>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION</u>**

Defendant National Collegiate Athletic Association ("NCAA") moves this Court under Rule 12(b)(6) to dismiss the Complaint filed by Plaintiff RaeQuan Battle ("Plaintiff") with respect to all Counts other than those based on the Sherman Act, 15 U.S.C. § 1 *et seq.,* and related West Virginia antitrust statutes, WV Code §§ 47-18-3 *et seq.,* because they fail to state any cognizable claims. The hodgepodge of contract related claims Plaintiff alleges fail for a multitude of reasons. The simplest—and most recurring of these—is that Plaintiff's allegations require the NCAA and the Court to guess what his claims are.

For example, Plaintiff repeatedly contends that the NCAA intentionally interfered with contracts between Plaintiff, West Virginia University, and a host of unnamed third-parties. But he fails to identify the terms of those contracts, and he also fails to allege how the NCAA intentionally interfered with those contracts. That same vagueness permeates all of Plaintiff's non-antitrust claims.

To elaborate briefly, Count I of Plaintiff's Complaint seeks relief based on Tortious Interference with an alleged "contractual relationship" between the Plaintiff and West Virginia University. Complaint ¶ 69. The Complaint provides: "As part and parcel of that [contractual] relationship, Plaintiff is entitled, and indeed expected, to participate on the varsity basketball team." *Id.* ¶ 70. The Complaint does not, however, attach the purported contract as an exhibit, nor does it identify the key terms of that contract or discuss how its terms have been infringed.

Count II of the Complaint likewise asserts Tortious Interference with alleged "contractual relationship[s]" between Plaintiff and "the Country Road Trust" and "other third parties," Complaint at ¶¶ 78-79, but again, no such contracts are attached, the terms of those contracts are not discussed, and any supposed interference is not specifically alleged.

In Count III of the Complaint, the Plaintiff seeks relief for Breach of Contract as an alleged third-party beneficiary of a purported contract or contracts between the NCAA and its member colleges and universities. *See* Complaint ¶¶ 90, 93-95, 97-98, 102. That claim is not legally cognizable under West Virginia law.

Count IV, based on Promissory Estoppel, alleges that the NCAA made "certain promises" to college student athletes, including to Plaintiff. Complaint ¶ 107-108. The Complaint does not describe how the alleged promises from the NCAA were communicated to Plaintiff other than to allege in vague terms that there were agreements between the NCAA and its many member institutions. *See, e.g., id.* at ¶¶ 96-97.[1]

Count X is duplicative of Count III for Breach of Contract as the alleged third-party beneficiary and must be dismissed for the same reasons as Count III. *See* Complaint ¶¶ 211, 213.

---

[1] Counts V-IX are based on the Sherman Act, 15 U.S.C. § 1 *et seq.,* and the related West Virginia antitrust statute, WV Code §§ 47-18-3 *et seq.,* and therefore fall outside of this motion to dismiss.

Count XI requests Declaratory Judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. That Act requires the existence of an "actual controversy" before a federal court is permitted to grant declaratory relief. *Id.* If there ever was an actual controversy, it is now moot as Plaintiff obtained all the relief that he once sought through Count XI. *See* Complaint ¶¶ 232-236.

Count XII of the Complaint seeks a Restraining Order and Injunctive Relief. Presently, that count is moot given this Court's Order dated December 13, 2023, issuing a temporary restraining order ("TRO"), subsequently converted by joint agreement of the parties to a preliminary injunction enjoining the NCAA from enforcing the Transfer Eligibility Rule and the Rule of Restitution. *See State of Ohio et al v. NCAA,* 1:23-CV-100, Dkt. No. 39. As a result, Plaintiff has already obtained the relief Count XII sought, WVU's basketball season is now over, and Plaintiff, after playing for WVU this last season, has no more eligibility.

Accordingly, Counts I-IV and X-XII of the Complaint should be dismissed, and the Complaint should be reduced to Counts V-IX, all brought under the Sherman Act and the related West Virginia antitrust statute.

### I.      Standard of Review

When reviewing a complaint, the Court "must accept as true all of the factual allegations contained in the complaint." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). In deciding on a motion, the Court need not confine its inquiry to the complaint; it may also consider "documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

Here, Plaintiff's Complaint falls short of these standards with respect to his state law claims.

## II. Facts As Alleged in Complaint

In Plaintiff's Complaint, he asserts several torts. Counts I and II allege that the NCAA tortiously interfered with contracts between Plaintiff, West Virginia University, and unnamed third parties. *See* Compl. ¶¶ 68-87. Plaintiff, however, does not allege the terms of those agreements. *Id.* Nor does he allege how the NCAA intentionally interfered with those agreements. *Id.* As it relates to contracts with unnamed third-parties, Plaintiff does not identify the counterparties to the contracts the NCAA purportedly interfered with, the steps the NCAA took to undermine Plaintiff's contracts with those unnamed third parties, or what damages Plaintiff suffered as a result of the NCAA's conduct. *Id.* at ¶¶ 77-87.

In Count III, Plaintiff contends that he is the beneficiary of certain purported contracts between the NCAA and its member institutions. However, Plaintiff identifies no specific agreement. *Id.* at ¶¶ 88-105. Nor does he identify any specific terms that he alleges the NCAA breached. *Id.* Instead, Plaintiff alleges that he has standing to enforce unidentified "agreements" because the NCAA's Constitution generally states that the NCAA is designed for the benefit of student athletes. *Id.* at ¶ 94.

In Count IV, Plaintiff generally alleges that certain actions the NCAA took amount to "promises," but he points to no actual promises made by the NCAA. *See, e.g.*, *id.* at ¶ 109 (stating that "[b]y granting waivers from its rules and regulations, the NCAA made certain promises to college student-athletes"). Further, Plaintiff does not allege any specific promise made to him,

4

when that promise was communicated, and how he altered his behavior based on that promise. *Id.* at ¶¶ 106-119.

Count X alleges that the NCAA arbitrarily enforced its own rules. *See, e.g.*, *id.* at ¶¶ 210-229. There are no further allegations to indicate why that alleged conduct might be actionable under West Virginia law.

Count XI requests that this Court enter a declaratory judgment on several issues that the NCAA is uninvolved in or has never contested. First, it asks this Court to declare the Plaintiff "has a right to attend West Virginia University." *Id.* at ¶ 233. But he does not allege that the NCAA precluded Plaintiff from attending West Virginia University or even has the authority to do that. Plaintiff also asks the Court to hold that he "has a right to play on the varsity basketball team at West Virginia University." *Id.* at ¶ 234. No facts are alleged that the NCAA denied Plaintiff that right.

In Count XII, Plaintiff asks for a TRO and preliminary injunction on the same grounds as Count XI. Plaintiff, however, was able to play for WVU since December 13, 2023 pursuant to this Court's order in the State case.

### III. Argument

**A. The allegations of the Complaint—even construed in the light most favorable to the Plaintiff—cannot establish Tortious Interference under West Virginia law.**

Counts I and II of the Complaint allege tortious interference with purported "contractual relationships" between the Plaintiff and WVU (Count I) and the Plaintiff and Country Roads Trust and "other third parties" (Count II). Compl., ¶¶ 69, 78, and 79. Under West Virginia law, a tortious interference claim requires (1) the existence of a contractual or business relationship or expectancy, (2) an ***intentional*** act of interference by a party outside that relationship or expectancy, (3) proof that the interference caused the claimant harm, and (4) damages. *Tucker v.*

5

*Thomas,* 853 F. Supp. 2d 576 (NDWV 2012). Plaintiff's allegations do not establish these elements.

Specifically, the Complaint does not describe or attach any contracts between the Plaintiff and WVU, Country Roads Trust, or any other third parties; even if it did, however, none of the allegations provide a basis for finding that the NCAA *intentionally* interfered with any relationship that Plaintiff might have had with those entities. Indeed, there is no allegation that the NCAA had any knowledge of business contracts or expectancies between Plaintiff and WVU, Country Roads Trust, or unidentified third-party businesses.

Moreover, the NCAA could not *intentionally* interfere with a college student's business contracts or expectancies simply by administering the Transfer Eligibility Rule enacted by its member schools. That allegation simply does not rise to a level of intentional interference with business contracts (which are not specified) and that, in any event, the NCAA had no knowledge.[2]

Counts I and II should therefore be dismissed.

**B. Count III must be dismissed because any alleged unidentified agreements between the NCAA and its member institutions would not have been intended solely for the benefit of the Plaintiff and other student athletes.**

To maintain a third-party beneficiary contract action under West Virginia law, the agreement between the contracting parties "must have been made for the third party's *sole* benefit." *Robinson v. Cabell Huntington Hospital, Inc.,* 498 S.E.2d 27, 32 (W.Va. 1997) (quoting *Woodford v. Glenville State College Hous. Corp.,* 159 W.Va. 442, 225 S.E.2d 671, 674 (1976) (emphasis added). Further, West Virginia Code §55-8-12 provides:

---

[2] Further, the Rule existed prior to any contract Plaintiff may have entered into with WVU or a third party. Accordingly, it would be literally impossible to find intentional interference with a contract entered into after the Rule was adopted.

> If a covenant or promise be made for the *sole* benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

(Emphasis added.)

As an initial matter, the Complaint does not demonstrate that the NCAA entered into any contracts with its member institutions, but, accepting the allegations in the Complaint as true for purposes of this motion, it cannot be said that the purported agreements between the NCAA and its member institutions were entered into for the sole benefit of Plaintiff. The Complaint asserts that the "NCAA is in essence and is formed by a collection of agreements and conventions between its members." Compl. ¶ 90. Based on this allegation, the NCAA owes its very existence to the agreements on which the Plaintiff sues, making it impossible for the Plaintiff to be the sole beneficiary. Moreover, the Complaint takes the position that the member colleges and universities also directly benefit from the purported agreements with the NCAA: "In exchange, the NCAA offers its member institutions the opportunity to play collegiate sports." *Id.* ¶ 92.

Bottom line, the member institutions envisioned that the system they established would create opportunities for college athletes, but that is not enough to give Plaintiff the right to sue as a third-party beneficiary. Under West Virginia law the claim must fail because any alleged benefit to Plaintiff would not have been the sole purpose of those purported agreements but just one speculative purpose out of many. *Robinson,* 498 S.E.2d at 32; *see also Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 290 (4th Cir. 2023) (denying third-party beneficiary action under WV law based on conclusion that the agreement was not "entered into *solely or directly for the benefit of"* the Plaintiff) (emphasis in original).

Count III should therefore be dismissed.

### C. The Complaint does not allege any promises sufficient to allow Plaintiff to recover against the NCAA under his promissory estoppel claim.

To establish a claim for promissory estoppel under West Virginia law, a party must show that a defendant made a promise that would reasonably induce reliance, and in fact actually induces detrimental reliance by the plaintiff to the extent that injustice can be avoided only by enforcement of the promise. *Hoover v. Moran,* 662 S.E.2d 711, 718 (W.Va. 2008). The Complaint obtusely alleges that the NCAA made "certain promises" to student athletes, Complaint ¶¶ 107-109, but there is no specific allegation as to what those promises to athletes were or what injustice can be avoided only by the enforcement of such promises.

Indeed, the "certain promises" that the Complaint describes are not alleged to be personal promises to Plaintiff at all. Put simply, Plaintiff alleges no specific promises that the NCAA made to him; instead, he merely alleges they are contained in certain unidentified agreements between the NCAA and its member institutions. However, to prevail on a promissory estoppel claim, Plaintiff must, at the very least, allege that there was a *promise* to him. His Complaint fails to make that allegation.

Nor could it. The crux of Plaintiff's claim seems to be that the NCAA's Division I schools adopted a waiver procedure under the Transfer Eligibility Rule. However, Plaintiff does not—and cannot—allege that the NCAA promised him that any such waiver would be granted. Instead, Plaintiff, like all other student athletes, was subject to the waiver process established by NCAA Division I schools. No waiver is guaranteed in this process, and Plaintiff cannot allege otherwise.

Count IV of the Complaint, based on the equitable doctrine of promissory estoppel, should therefore be dismissed because Plaintiff cannot allege any specific promise that forms the basis of his promissory estoppel claim.

### D. Count X is merely a restatement of Plaintiff's breach of contract claim with a request for relief under the Federal Declaratory Judgment Act.

Even accepting all the allegations contained therein, Count X of the Complaint does not establish a separate cause of action under West Virginia law. At best Count X is a combination of other Counts within the Complaint – a hodgepodge of contract and federal declaratory judgment claims, pieced together in a near indiscernible fashion that does not create a legitimate claim in West Virginia.

The Count begins much like Count III, *see* above, alleging that the NCAA "is in essence and is formed by a collection of agreements and conventions between its member[]" institutions, Compl., ¶ 211, and that the "Plaintiff is a third-party beneficiary of those agreements[,]" *id*. at ¶ 213. Accordingly, this claim appears simply to be a reformulation of the Third-Party Beneficiary Contract claim from Count III without seeking damages. Instead, it seeks Declaratory Judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, Compl. ¶¶ 227-28, and a permanent injunction, *id. ¶* 229. But a baseless claim does not become legally cognizable merely because it is alleged under the auspices of the Declaratory Judgment Act. Because the grounds under which Plaintiff seeks a declaratory judgment are insufficient for the same reasons explained with respect to Count III, his declaratory judgment claim must fail.[3]

### E. Counts XI and XII Are Moot

On December 13, 2023, in the companion case of *State of Ohio et al v. NCAA,* 1:23-CV-100, this Court ordered a TRO enjoining the NCAA from enforcing the Transfer Eligibility Rule and the Rule of Restitution, as it relates to a member school or student-athletes reliance on the Court's TRO. See Dkt. No. 39.  Soon thereafter, the parties in that case jointly agreed to convert

---

[3] In Count X, Plaintiff also claims that the NCAA acted "arbitrary and capriciously." But the NCAA is not a federal or state actor, and there are no allegations as to why such standards are applicable to a private entity such as the NCAA under West Virginia law.

9

that TRO into a preliminary injunction. Therefore, after December 13, 2023, there were no restrictions on Plaintiff, and he fully participated for the WVU varsity basketball team in all practices and games. He successfully completed his senior season, thereby completing his college career.

Count XI of Plaintiff's Complaint seeks relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. To apply the Declaratory Judgment Act, and consistent with the case or controversy clause of Article III of the U.S. Constitution, there must be an actual "controversy" that is "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tenn. Valley Authority,* 297 U.S. 288, 325 (1936). In the present case, because Plaintiff already received the relief that he sought, no actual controversy remains with respect to this Plaintiff, and he can receive no additional relief from a prospective declaratory judgment. Likewise, regarding Count XII seeking a Restraining Order and Injunctive Relief, Plaintiff has already received all the injunctive relief that he can enjoy, and he would gain no further relief from a permanent injunction.

For these reasons, Counts XI and XII of Plaintiff's Complaint should be dismissed as moot pursuant to Rule 12(b)(6).

### IV.     Conclusion

Plaintiff's Complaint brings numerous claims against the Defendant NCAA, but they can be grouped into two categories: the antitrust claims (Counts V-IX), and the state law claims (Counts I-IV, and X-XII). With respect to the state law claims, the allegations, even when viewed

in a light most favorable to the Plaintiff, fail to state claims upon which relief can be granted, so Counts I-IV and X-XII should be dismissed.[4]

Dated:  April 17, 2024              Respectfully submitted,


                                    */s/ Benjamin L. Bailey*
                                    Benjamin L. Bailey (WVSB No. 200)
                                    Christopher D. Smith (WVSB No. 13050)
                                    BAILEY & GLASSER LLP
                                    209 Capitol Street
                                    Charleston, WV  25302
                                    Telephone: (304) 345-6555
                                    Facsimile: (304) 342-1110
                                    bbailey@baileyglasser.com
                                    csmith@baileyglasser.com

                                    Philip D. Bartz (Admitted *Pro Hac Vice*)
                                    BRYAN CAVE LEIGHTON PAISNER LLP
                                    1155 F Street NW, Suite 700
                                    Washington, DC 20004
                                    (202) 508-6000 (phone)
                                    (202) 508-6200 (fax)
                                    Philip.bartz@bclplaw.com
                                    Stephen M. Scannell (Admitted *Pro Hac Vice*)
                                    BRYAN CAVE LEIGHTON PAISNER LLP
                                    211 North Broadway Street, Suite 3600
                                    St. Louis, MO 63102
                                    (314) 259-2516 (phone)
                                    (314) 259-2020 (fax)
                                    Stephen.scannell@bclplaw.com

                                    Benjamin J. Hogan (WVSB No. 12997)
                                    BRYAN CAVE LEIGHTON PAISNER LLP
                                    1700 Lincoln Street, Suite 4100
                                    Denver, CO 80203-5451
                                    (303) 866-7000 (phone)
                                    (303) 866-0200 (fax)
                                    Ben.hogan@bclplaw.com
                                    *Attorneys for Defendant National Collegiate Athletic Association*

---

[4] The NCAA respectfully submits that the antitrust claims lack merit as well.  In light of this Court's order of December 13, 2023 in the State case, however, the NCAA believes that those issues should be addressed at a later point in these proceedings, not at the Rule 12(b)(6) stage.

11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## CLARKSBURG DIVISION

| | | |
|---|---|---|
| **RAEQUAN BATTLE,** | : | |
| | : | |
| **Plaintiffs,** | : | CASE NO: 1:23-cv-00101 |
| | : | |
| v. | : | Judge John Preston Bailey |
| | : | |
| **NATIONAL COLLEGIATE** | : | |
| **ATHLETIC ASSOCIATION** | : | |
| | : | |
| **Defendant.** | : | |

## CERTIFICATE OF SERVICE

I, Benjamin L. Bailey do hereby certify that on 17th day of April 2024, I filed the foregoing document titled **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT NATIONAL COLLEGIATE ATHLETIC ASSOCIATION** using the Court's CM/ECF system which will send notification to all counsel of record.

                                                          */s/ Benjamin L. Bailey*
                                                          Benjamin L. Bailey (WVSB No. 200)