IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg

**RAEQUAN BATTLE,**

        Plaintiff,

v.                                      **CIVIL ACTION NO. 1:23-CV-101**
                                            Judge Bailey

**NATIONAL COLLEGIATE ATHLETIC
ASSOCIATION,**

        Defendant.

**ORDER**

      Pending before this Court is the National Collegiate Athletic Association's ("NCAA") Motion to Dismiss [Doc. 30], filed April 17, 2024. After an extension of time, RaeQuan Battle filed his Response in Opposition [Doc. 34] on May 15, 2024. NCAA filed a Reply [Doc. 35] on May 22, 2024. This matter is now ripe for adjudication. For the reasons that follow, this Court will grant in part and deny in part the NCAA's Motion to Dismiss.

**I.**    **Background[1]**

      RaeQuan Battle started his basketball career at the University of Washington. Thereafter, he transferred to Montana State University ("MSU"). RaeQuan Battle lost his coach at MSU, a situation over which he had no control, which prompted his decision to transfer to West Virginia University ("WVU"). WVU took a chance on RaeQuan Battle, who

---

[1] This Court provided an extensive background about the NCAA in its December 13, 2023 Order in Civil Action Number 1:23-CV-100. See [Doc. 39 at 1–5]. This Court adopts and incorporates the discussion in the December 13, 2023 Order herein.

1

faced a disadvantage by being restricted by the Transfer Eligibility Rule. WVU applied for him to receive a waiver for immediate eligibility, as he and WVU believed that his circumstances fit within the NCAA's criteria for waiver requests. The NCAA denied his appeal for immediate eligibility.

On December 8, 2023, Mr. Battle filed a Complaint against NCAA. *See* [Doc. 1]. In his Complaint, Mr. Battle asserts twelve (12) causes of action:

Count I - Tortious Interference – School [Doc. 1 at ¶¶ 68–76];

Count II - Tortious Interference – Other [id. at ¶¶ 77–87];

Count III - Breach of Contract – Third Party Beneficiary [id. at ¶¶ 88–105];

Count IV - Promissory Estoppel [id. at ¶¶ 106–119];

Count V - Per Se Violation of § 1 of the Sherman Act, 15 U.S.C. § 1 [id. at ¶¶ 120–135];

Count VI - Unreasonable Restraint of Trade in Violation of § 1 of the Sherman Act, 15 U.S.C. § 1 [id. at ¶¶ 136–150];

Count VII - Denial of Access to an Essential Facility Violation of the Sherman Act, 15 U.S.C. § 2 [id. at ¶¶ 151–169];

Count VIII - Contract and Combination in Restraint of Trade [id. at ¶¶ 170–188];

Count IX - Establishment of a Monopoly in Violation of West Virginia Law [id. at ¶¶ 189–209];

Count X - Arbitrary Enforcement of Rules, Regulations, and/or Bylaws [id. at ¶¶ 210–229];

> Count XI - Declaratory Judgment [id. at ¶¶ 230–236]; and
>
> Count XII - Restraining Order and Injunctive Relief [id. at ¶¶ 237–241].

For relief, Mr. Battle demands:

> a. Order from this Court enjoining the NCAA from enforcing its rules, regulations, and/or bylaws that prevent Plaintiff from immediately playing basketball for West Virginia University;
>
> b. All damages due to Plaintiff from Defendant's conduct;
>
> c. Treble damages pursuant to 15 U.S.C. § 15;
>
> d. For Plaintiff's attorneys' fees, costs and expenses;
>
> e. For such other relief that the Court may deem just and equitable.

[Doc. 1 at 33–34].

In the NCAA's Motion to Dismiss, the NCAA moves this Court to dismiss all Counts in Mr. Battle's Complaint that are not based on violations of the Sherman Act or related to West Virginia antitrust statutes because no such claims are asserted for which relief can be granted. More specifically, with respect to Counts I and II, the NCAA argues that the Complaint asserts Tortious Interference with alleged "contractual relationship[s]," but does not attach any such contracts. *See* [Doc. 31 at 2, 5–6].

With respect to Count III, the NCAA asserts that Mr. Battle's claim for relief for Breach of Contract as an alleged third-party beneficiary of a purported contract or contracts between the NCAA and its member colleges and universities is not legally cognizable under West Virginia law. *See* [id. at 2, 6–7].

3

The NCAA argues that Count IV, based on promissory estoppel, does not describe how the alleged promises from the NCAA were communicated to Mr. Battle other than to allege in vague terms that there were agreements between the NCAA and its many member institutions. See [id. at 2, 8].

The NCAA asserts that Count X is duplicative of Count III and must be dismissed for the same reasons as Count III. See [id. at 2, 9].

With respect to Count XI, the NCAA argues that if there ever was an actual controversy, it is now moot as Mr. Battle obtained all the relief that he once sought through Count XI. See [id. at 3, 9–10].

Lastly, with respect to Count XII, the NCAA argues the request for a Restraining Order and Injunctive Relief is moot given this Court's December 13, 2023 Order in Civil Action Number 1:23-CV-100. See [id. at 3, 9–10].

Mr. Battle filed his Response in Opposition, alleging that he filed a properly plead complaint. See [Doc. 34]. More specifically, with respect to Counts I and II, Mr. Battle asserts that "[t]aken as true, along with all factual allegations contained in the Complaint, [Mr. Battle] has sufficiently plead that [the NCAA] has tortiously interfered with contractual relationships with West Virginia University [, Country Roads Trust, and other third parties]." See [id. at 3–5].

With respect to Count III, Mr. Battle asserts that he is "clearly a third-party beneficiary to the Bylaws and Constitution of the NCAA" and has thus plead a cognizable claim for breach of contract as a third-party beneficiary. See [id. at 5–9].

4

With respect to Count IV, Mr. Battle argues that he has "clearly plead that he relied upon [ ] promises 'when making decisions regarding attending college,' *i.e.*, these promises induced action or forbearance by [Mr. Battle]." See [id. at 10–11]. Mr. Battle asserts that in his Complaint, he notes that "certain promises were made *to* college athletes such as himself and that he specifically relief upon those promises." [Id. at 11 (emphasis in original)].

Lastly, Mr. Battle argues that he has sufficiently plead Count X by alleging in the Complaint that the NCAA's decision-making was arbitrary and capricious and that he was harmed by it.

The NCAA filed a Reply [Doc. 35], alleging that Mr. Battle "asserts an assortment of ill-defined and unsupported claims in his Complaint." [Doc. 35 at 1]. The NCAA argues that Mr. Battle's response "offers nothing to change the fact that [Mr. Battle's] claims are either (1) unsupported by crucial facts or (2) not cognizable under the law." [Id.].

## II.   Standard of Review

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); see also **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court, noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." **Twombly**, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

"[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. **Id**. at 396–97.

### III. Analysis

#### A. Count I and II (Tortious Interference)

In order to establish a claim of tortious interference with contract, a plaintiff must show: (1) the existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by an outside party; (3) that the interference caused harm; and (4) damages. Syl. Pt. 5, **Hatfield v. Health Mgmt. Assocs. of W. Va.**, 223 W.Va. 259,

672 S.E.2d 395 (2008). "Although the plaintiffs need not prove a link between the damages they complain of and defendants' alleged misconduct at the motion to dismiss stage, they must at least allege some fact that would allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" ***Imagine Medispa, LLC v. Transformations, Inc.,*** 999 F.Supp. 873, 884 (S.D. W.Va. 2014) (Copenhaver, Jr., J.) (quoting ***Ashcroft v. Iqbal,*** 556 U.S. at 678–79)).

Count I of the Complaint alleges that Mr. Battle had a contractual relationship with West Virginia University; that the NCAA was aware of this relationship; that the NCAA interfered with the relationship between Mr. Battle and West Virginia University by acting in an arbitrary and/or capricious manner with regard to Mr. Battle and his eligibility, ignoring Mr. Battle's rights, and violating the NCAA's own rules and guidelines; and that Mr. Battle was harmed by said interference. See [Doc. 1 at ¶¶ 68–76].

Similar to Count I, Count II of the Complaint alleges that Mr. Battle had a contractual relationship with the Country Roads Trust and other third parties for the use of his name, image, and likeness; that the NCAA was aware of these relationships; that the NCAA interfered with the relationship between Mr. Battle, the Country Roads Trust and other third parties by refusing to grant Mr. Battle a waiver when he is entitled to one, acting arbitrarily and/or capriciously with regard to Mr Battle and his eligibility, ignoring Mr. Battle's rights, and violating the NCAA's own rules and guidelines; and that Mr. Battle was harmed by said interferences. See [id. at ¶¶ 77–87].

Taken as true, along with all factual allegations in the Complaint, Mr. Battle has sufficiently plead that the NCAA has tortiously interfered with contractual relationships at

this stage of the proceedings. Thus, the NCAA's Motion with respect to Counts I and II is **DENIED**.

### B. Count III (Breach of Contract - Third-Party Beneficiary)

To maintain a third-party beneficiary contract action under West Virginia law, the agreement between the contracting parties "must have been made for the third party's sole benefit." ***Robinson v. Cabell Huntington Hosp., Inc.***, 201 W.Va. 455, 460, 498 S.E.2d 27, 32 (1997) (quoting ***Woodford v. Glenville State College Hous. Corp.***, 159 W.Va. 442, 448, 225 S.E.2d 671, 674 (1976).

> Further, West Virginia Code § 55-8-12 provides:
>
> If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

The West Virginia Supreme Court of Appeals has held that West Virginia Code § 55-8-12 "applied to a case wherein the plaintiff was one of a class of persons designated in a contract for whose benefit the contract was made; and that a member of such class could maintain an action at law, although not a party to the contract." ***United Dispatch v. E. J. Albrecht Co.***, 135 W.Va. 34, 42, 62 S.E.2d 289, 294 (1950) (citing ***Jenkins v. Chesapeake & Ohio Railway Co.***, 61 W.Va. 597, 57 S.E. 48 (1907)).

At this stage of the proceedings, Mr. Battle has plead a cognizable claim for breach of contract as a third-party beneficiary. The Constitution and Bylaws of the NCAA are

binding agreements between the NCAA and its members for the benefit of student-athletes. During all relevant times, Mr. Battle was a collegiate athlete.

As this Court has previously held:

> "It is well established that the formal bylaws of an organization are to be construed as a contractual agreement between the organization and its members." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. Cir. 2005) (internal citation omitted). "[T]he Conference Bylaws constitute[ ] a contractual agreement between the Parties." *Rutgers, The State Univ. v. Am. Athletic Conf.*, 2013 WL 5936632, at *8 (D. N.J. 2013); see also *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 16 (D.D.C. 2014) (finding "[an] [organization's] Constitution and Bylaws form a contract between that [organization] and its members.").

*Mountain East Conference v. Franklin University*, 2023 WL 2415277, at *4 (N.D. W.Va. Mar. 8, 2023) (Kleeh, C.J.).

The NCAA Constitution, as cited directly in Mr. Battle's Complaint, is quite clear that student-athletes are the beneficiaries of the NCAA's agreements:

> The National Collegiate Athletic Association is a voluntary, self-governing, organization for four-year colleges, universities and conferences committed to the well-being and development of student-athletes, to sound academic standards and the academic success of student-athletes, and to diversity, equity and inclusion. Member institutions and conference believe that intercollegiate athletics programs provide student-athletes, with the

9

opportunity to participate in sports and compete as a vital, co-curricular part of their educational experience. The member schools and conferences likewise are committed to integrity and sportsmanship in their athletic programs and to institutional control of and responsibility for those programs. The basic purpose of the Association is to support and promote healthy and safe intercollegiate athletics, including national championships, as an integral part of the education program and the student-athlete as an integral part of the student body. (Adopted: 1/20/2022 effective 8/1/2022).

NCAA Constitution Preamble. *See also* [Doc. 1 at ¶¶ 94(b), 94(c)].

There are a number of other articles within the NCAA Constitution that highlight the fact that student-athletes are the beneficiaries of the NCAA's agreements. *See* [Doc. 34 at 7–8].[2]

Mr. Battle has plead that he is "one of a class of persons designated in a contract for whose benefit the contract was made; and that a member of such class could maintain an action at law, although not a party to the contract." *See* **United Dispatch,** 135 W.Va. at 42, 62 S.E.2d at 294. Because Mr. Battle has sufficiently alleged that he is a third-party beneficiary to the Bylaws and Constitution of the NCAA, the NCAA's Motion with respect to Count III is **DENIED**.

---

[2] More specifically, Mr. Battle points to Article 1(A): Principles (The Primacy of Academic Experience); Article 1(B): Principles (The Collegiate Student-Athlete Model); Article 1(D): Principles (Student-Athlete Well-Being); and Article 1(H): Principles (Recruiting Standards).

### C.     Count IV (Promissory Estoppel)

In West Virginia, a promissory estoppel claim requires the plaintiff to prove the following:

> (1) a promise; (2) reasonable reliance on the promise by the plaintiff; (3) that it was foreseeable to the defendant that the plaintiff would rely on the promise; (4) that the plaintiff suffered damages as a result of her reasonable reliance upon the promise of the defendant; and (5) under a circumstance that injustice can only be avoided through enforcement of the promise.

**Koerber v. Wheeling Island Gaming, Inc.**, 2013 WL 162669, at *4 (N.D. W. Va. Jan. 15, 2013) (Stamp, Jr., J.) (citing **Everett v. Brown**, 174 W.Va. 35, 321 S.E.2d 685 (1984)). See also Syl. Pt. 4, **Hoover v. Moran**, 222 W.Va. 112, 662 S.E.2d 711 (2008) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a *third person* and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires." (emphasis added)).

At this stage of the proceedings, Mr. Battle has sufficiently plead that the NCAA made certain promises that Mr. Battle relied upon when making decisions regarding attending college. As plead in the Complaint, those promises include, but are not limited to:

(1) promises that the NCAA would apply its rules, regulations, bylaws, and guidelines uniformly and fairly in a non-arbitrary and non-capricious manner;

(2) promises that the NCAA would not make arbitrary and capricious decisions when it came to college student athletes' welfare, including the mental health of college student-athletes;

(3) promises that the NCAA would consider and take into special account situations where adherence to NCAA rules and regulations would harm college student athletes' welfare, including the mental health of college student-athletes;

(4) promises that the NCAA would follow its own guidelines when considering whether to grant waivers from NCAA rules, regulations, and bylaws to college student-athletes; and

(5) promises that the NCAA would genuinely consider requests for waivers from NCAA rules and regulations made by college student-athletes.

[Doc. 1 at ¶¶ 110–114]. Mr. Battle also alleges in the Complaint that he relied upon these promises to his detriment and has been damaged. *See* [id. at ¶¶ 118–119].

Taken as true, along with all factual allegations in the Complaint, Mr. Battle has sufficiently plead a claim for promissory estoppel at this stage of the proceedings. Thus, the NCAA's Motion with respect to Count IV is **DENIED**.

### D. Count X (Arbitrary Enforcement of Rules, Regulations and/or Bylaws)

Count X is merely a restatement of Mr. Battle's breach of contract claim with a request for relief under the Federal Declaratory Judgment Act. Even accepting all the allegations contained in Count X, Count X of the Complaint does not establish a separate cause of action under West Virginia law.

Count X is not separate and distinct from a breach of contract claim. In fact, **Oliver v. Natl. Collegiate Athletic Assn.**, 2009-Ohio-6587, ¶ 29, 155 Ohio Misc. 2d 17, 29, 920 N.E.2d 203, 212, *vacated pursuant to settlement* (Sept. 30, 2009), recognized that the arbitrary and capricious claim was simply a claim for the violation of the duty of good faith and fair dealing as a matter of contract law. West Virginia law explicitly recognizes that, "An alleged breach of the covenant of good faith and fair dealing is not a separate cause of action from a breach of contract claim." **State ex rel. Nationwide Mut. Ins. Co. v. Wilson**, 236 W.Va. 228, 231, 778 S.E.2d 677, 680 (2015).

Thus, the NCAA's Motion is **GRANTED** with respect to Count X and this Court will **DISMISS** Count X from Mr. Battle's Complaint.

### E. Counts XI and XII

In the NCAA's Motion to Dismiss, the NCAA argues that Counts XI is now moot because in the companion case of **State of Ohio et al v. NCAA**, Civil Action Number 1:23-CV-100, this Court ordered a Temporary Restraining Order enjoining the NCAA from enforcing the Transfer Eligibility Rule and the Rule of Restitution, as it relates to a member school or student-athletes reliance on this Court's Temporary Restraining Order. *See* [Doc. 31 at 3, 9–10]. Soon thereafter, the parties in that case jointly agreed to convert the

Temporary Restraining Order into a preliminary injunction. See **State of Ohio et al v. NCAA**, Civil Action Number 1:23-CV-100 [Doc. 63]. After December 13, 2023, there were no restrictions on Mr. Battle, and he fully participated for the West Virginia University's Men's Basketball Team in all practices and games.

Next, the NCAA argues Count XII is also moot because there is no actual controversy. [Doc. 31 at 10]. More specifically, the NCAA states because Mr. Battle already received the relief that he sought, no actual controversy remains with respect to Mr. Battle, and he can receive no additional relief from a prospective declaratory judgment.

In Mr. Battle's response, he provides no objection to Counts XI and XII being dismissed. Thus, this Court will **DISMISS** Counts XI and XII from Mr. Battle's Complaint.

## IV. Conclusion

The NCAA's Motion to Dismiss **[Doc. 30]** is **GRANTED IN PART AND DENIED IN PART**. Counts X, XI and XII are hereby **DISMISSED** from Mr. Battle's Complaint. All other counts in Mr. Battle's Complaint remain.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** May 28, 2024.

**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**